**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**

**WESTFIELD INSURANCE COMPANY,**

ELECTRONICALLY
FILED
May 27 2022
U.S. DISTRICT COURT
Northern District of WV

         **Plaintiff,**

**v.**                                                    Civil Action No. **1:22-cv-45  (Kleeh)**

**R&D TRUCKING OF MORGANTOWN, INC.,
a West Virginia corporation; PHOENIX ENERGY
RESOURCES, LLC, PHOENIX FEDERAL
NO. 2 MINING, LLC, and ERP, LLC,**

         **Defendants.**

**WESTFIELD INSURANCE COMPANY'S
COMPLAINT FOR DECLARATORY RELIEF**

Comes now Westfield Insurance Company ("Westfield"), pursuant to Rule 57 of the Federal Rules of Civil Procedure, 28 U.S.C. § 2201, and W.Va. Code § 55-13-1 *et seq.*, which for its Complaint for Declaratory Relief, states as follows:

**Jurisdiction**

1.      Westfield is an Ohio corporation, with its principal place of business in Westfield Center, Ohio.

2.      Defendant R&D Trucking of Morgantown, Inc. ("R&D") is, upon information and belief, a West Virginia Corporation, with its principal place of business in Granville, West Virginia.

3.      Defendants Phoenix Energy Resources, LLC, Phoenix Federal No. 2 Mining, LLC and ERP, LLC (collectively "the Phoenix Defendants") are, upon information and belief, West Virginia limited liability companies, with their principal place of business in Princeton, West Virginia.

35067/173

4.      The transactions giving rise to this Complaint for Declaratory Relief occurred in Monongalia County, West Virginia.

5.      This Court has venue and jurisdiction over this matter pursuant to 28 U.S.C. § 2201, based upon complete diversity of citizenship between the parties and an amount in controversy in excess of $75,000.

## Factual Background

### *The Underlying Claims*

6.      The Phoenix Defendants filed Civil Action No. 21-C-126 against R&D in April of 2021, in the Circuit Court of Monongalia County, West Virginia.

7.      In their *Complaint* in Civil Action No. 21-C-126, the Phoenix Defendants assert that they contracted with R&D in October of 2018 to repair/replace a culvert at a mine site operated by the Phoenix Defendants in Monongalia County, West Virginia.

8.      The Phoenix Defendants further assert that specific materials were to be used on the culvert project under guidelines issued by the West Virginia Department of Environmental Protection (WVDEP) and regulations issued by the Environmental Protection Agency.

9.      It is further alleged that the culvert installed by R&D subsequently failed and that such failure was noted on January 24, 2019, when the WVDEP issued an "Imminent Danger-Cessation Order" ("Order") to the Phoenix Defendants, which Order was purportedly issued because the culvert installed by R&D failed/collapsed and the WVDEP determined that the culvert was not installed according to their approved design and the pipe installed did not meet specifications for the Project.

10.     The Phoenix Defendants have further asserted that, upon learning of the problems

35067/173                                    2

associated with the culvert project, the management of Phoenix Federal No. 2 Mining attempted to contact R&D's Rick Buzzo several times in an effort to have him/them correct the problems associated with the culvert Project, that R&D did not respond, and that the Phoenix Defendants were forced to hire a replacement contractor to correct the problems with R&D's work and product.

11.     The Phoenix Defendants' *Complaint* in Civil Action No. 21-C-126 contains three (3) Counts, titled *Breach of Contract, Negligence and Economic Waste.*

12.     In their *Breach of Contract* Count, the Phoenix Defendants contend that they are entitled to compensatory/contract damages, costs to repair damages and cost to complete the work placing the culvert in the condition it should have been in if properly done under the contract between them and R&D.

13.     In their *Negligence* Count, the Phoenix Defendants assert that R&D failed to use ordinary care in performing its work.

14.     In their *Economic Waste* Count, the Phoenix Defendants allege that R&D committed economic waste and that the proper measure of their damages is the cost of repairing or completing the work and placing the construction in the condition it should have been in if R&D's work was performed/completed properly.

15.     The Phoenix Defendants go on to allege that Phoenix Federal No. 2 Mining was made to suffer penalties and fines, associated with water pollution and for non compliance with WVDEP regulations because of the faulty culvert project installation by R&D.

16.     The Phoenix Defendants have subsequently filed an *Amended Complaint* in which they set forth additional Counts, identified as *Continuous Tort*, *Punitive Damages* and *Breach Of Implied Warranty*, in which they allege that R&D's conduct with respect to the culvert amounts to

35067/173                                          3

a continuous tort and a breach of the implied warranty of fitness for its intended use and that the Phoenix Defendants are entitled to punitive damages from R&D.

17.    The Phoenix Defendants have sought a judgment against R&D for all monies lost, for punitive damages and for pre- and post-judgment interest and attorney's fees.

*The Westfield Policy*

18.    R&D is the named insured under a policy of insurance issued by Westfield, identified as Policy No. TRA 7931424 ("the Westfield Policy"), with relevant dates of coverage of October 13, 2018 through October 13, 2019.

19.    The Westfield Policy contains a Commercial General Liability Coverage Part (CGL).

20.    The Westfield Policy provides, in relevant part, as follows:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

\* \* \*

**SECTION I - COVERAGES**

**COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

1.    **Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking dam ages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

        \* \* \*

    **b.**    This insurance applies to "bodily injury" and "property damage" only if:

        **(1)**    **The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;"**

        \* \* \*

    **c.**      "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

    **d.**      "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.** of Section **II** - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

        **(1)**    Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

        **(2)**    Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

        **(3)**    Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

    **e.**      Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

**2.**    **Exclusions**

This insurance does not apply to:

* * *

    **b.**      **Contractual Liability**

        "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

        **(1)**    That the insured would have in the absence of the contract or agreement; or

* * *

    **j.**      **Damage To Property**

        "Property damage" to:

* * *

      **(6)**      That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

* * *

Paragraph (6) of this exclusion does not apply to "property damage" included in the "products-completed operations hazard."

**k.**      **Damage To Your Product**

      "Property damage" to "your product" arising out of it or any part of it.

**l.**      **Damage To Your Work**

      "Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard."

      This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a subcontractor.

**m.**      **Damage To Impaired Property Or Property Not Physically Injured**

      "Property damage" to "impaired property" or property that has not been physically injured, arising out of:

      **(1)**      A defect, deficiency, inadequacy or dangerous condition in "your product" or "your work;" or

      **(2)**      A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

      This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

* * *

## SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

**2.**      **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

**a.**      You must see to it that we are notified as soon as practicable of an "occurrence" or an offense which may result in a claim. To the extent possible, notice should include:

      **(1)**      How, when and where the "occurrence" or offense took place;

      **(2)**      The names and addresses of any injured persons and witnesses; and

      **(3)**      The nature and location of any injury or damage arising out of the "occurrence" or offense.

**b.**      If a claim is made or "suit" is brought against any insured, you must:

      **(1)**      Immediately record the specifics of the claim or "suit" and the date received;

and

    (2)      Notify us as soon as practicable.

You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

**c.**     You and any other involved insured must:

    (1)      Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit;"

    (2)      Authorize us to obtain records and other information;

    (3)      Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

    (4)      Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

\* \* \*

## SECTION V - DEFINITIONS

\* \* \*

**3.**     "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

**8.**     "Impaired property" means tangible property, other than "your product" or "your work," that cannot be used or is less useful because:

    **a.**     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    **b.**     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of "your product" or "your work" or your fulfilling the terms of the contract or agreement.

\* \* \*

**13.**    "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

**15.**    "Pollutants" mean any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

**16.**    "Products-completed operations hazard":

    **a.**    Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        **(1)**    Products that are still in your physical possession; or

        **(2)**    Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            **(a)**    When all of the work called for in your contract has been completed.

            **(b)**    When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            **(c)**    When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

\* \* \*

**17.**    "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**18.**    "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged.

\* \* \*

**21.**    "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your product;" and

        **(2)**    The providing of or failure to provide warnings or instructions.

    **c.**    Does not include vending machines or other property rented to or located for the use of others but not sold.

**22.**    "Your work":

    **a.**    Means:

        **(1)**    Work or operations performed by you or on your behalf; and

        **(2)**    Materials, parts or equipment furnished in connection with such work or operations.

    **b.**    Includes:

        **(1)**    Warranties or representations made at any time with respect to the fit ness, quality, durability, performance or use of "your work"; and

        **(2)**    The providing of or failure to provide warnings or instructions.

* * *

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**LIMITED POLLUTION LIABILITY ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

LIMITED POLLUTION LIMIT  $     <u>500,000</u>

(If no entry appears above, there is no separate limit of insurance for the coverage provided by this endorsement.  The Each Occurrence Limit of Insurance shown in the Declarations applies.)

NOTE:  THIS ENDORSEMENT REQUIRES THAT THE EVENT BE REPORTED TO US AS DESCRIBED BELOW.

With respect to "bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

**A.**    SECTION **I** – COVERAGES, COVERAGE **A**, Exclusion **b.** is replaced by the following:

    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement.

**B.**    SECTION **I** – COVERAGES, COVERAGE **A.** Exclusion **f.** is replaced by the following:

(1)   "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants":

    (a)   At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured, if the event:

        (I)   Had a duration longer than 72 hours, or

        (ii)   Was not reported to us within 30 days of the date the event commenced;

    However, this subparagraph does not apply to:

        (I)   "Bodily injury" if sustained within a building and caused by smoke, fumes, vapor or soot from equipment used to heat that building;

        (ii)   "Bodily injury" or "property damage" for which you may be held liable, if you are contractor and the owner or lessee of such premises, site or location has been added to your policy as an additional insured with respect to your ongoing operations performed for that additional insured at that premises, site or location and such premises, site or location is not and never was owned or occupied by, or rented or leaned to, any insured, other than that additional insured; or

        (iii)   "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire";

    (b)   At or from any premises, site or location which is or was at any time used by or for any insured or others for the handling, storage, disposal, processing or treatment of waste;

    (c)   Which are or were at any time transported, handled, stored, treated, disposed of, or processed as waste by or for:

        (I)   Any insured; or

        (ii)   Any person or organization for whom you may be legally responsible; or

    (d)   At or from any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractors or subcontractors, if the event:

        (I)   Had a duration longer than 72 hours, or

        (ii)   Was not reported to us within 30 days of the date the event commenced.

    However, this subparagraph does not apply to:

        (I)   "Bodily injury" or "property damage" arising out of the escape of fuels, lubricants or other operating fluids which are needed to

perform the normal electrical, hydraulic or mechanical functions necessary for the operation of "mobile equipment" or its parts, if such fuels, lubricants or other operating fluids escape from a vehicle part designed to hold, store or receive them. This exception does not apply if the "bodily injury" or "property damage" arises out of the intentional discharge, dispersal or release of the fuels, lubricants or other operating fluids, or if such fuels, lubricants or other operating fluids are brought on or to the premises, site or location with the intent that they be discharged, dispersed or released as part of the operations being performed by such insured contractor or subcontractor;

(ii)     "Bodily injury" or "property damage" sustained within a building and caused by the release of gases, fumes or vapors from materials brought in to that building in connection with operations being performed by you or on your behalf by a contractor or subcontractor; or

(iii)    "Bodily injury" or "property damage" arising out of heat, smoke or fumes from a "hostile fire".

(e)     At or form any premises, site or location on which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the operations are to test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to or assess the effects of "pollutants"; or

(f)     At or from a storage tank or other container, ducts or piping which is below or partially below the surface of the ground or water or which, at any time, has been buried under the surface of the ground or water and then subsequently exposed by erosion, excavation or any other means if the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" arises at or from any premises, site or location:

(I)     Which is or was at any time owned or occupied by, or rented or loaned to, any insured; or

(ii)     Which any insured or any contractors or subcontractors working directly or indirectly on any insured's behalf are performing operations if the "pollutants" are brought on or to the premises, site or location in connection with such operations by such insured, contractors or subcontractors.

(2)     Any loss, cost or expense arising out of any:

(a)     Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

(b)     Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, or in any way responding to or assessing the effects of "pollutants".

As used in this exclusion, event means the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants".

However, this paragraph does not apply to liability for damages because of "property damage" that the insured would have in the absence of such request, demand, order or statutory or regulatory requirement, or such claim or "suit" by or on behalf of a governmental authority.

* * *

**D.** If a Limited Pollution Limit is shown in this endorsement, the following is added to SECTION **III – LIMITS OF INSURANCE.**

**8.** Subject to **5.** above, the Limited Pollution Limit is the most we will pay under Coverage A for all damages arising out of any one event.

**THIS ENDORSEMENT CHANGES THE POLICY.**

**PLEASE READ IT CAREFULLY.**

**COMMERCIAL GENERAL LIABILITY CONTRACTORS ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE FORM

* * *

**K.** **KNOWLEDGE AND NOTICE OF OCCURRENCE**

Under **SECTION IV· COMMERCIAL GENERAL**

**LIABILITY CONDITIONS, 2. Duties in the Event of Occurrence, Offense, Claim Or Suit,** the following is added:

**e.** The requirement in Condition **2.a.** applies only when the "occurrence" or offense is known to:

**(1)** You, if you are an individual;

**(2)** A partner, if you are a partnership;

**(3)** An "executive officer" or insurance manager, if you are a corporation; or

**(4)** A manager, if you are a limited liability company.

**f.** The requirement in Condition **2.b.** will not be breached unless the breach occurs after such claim or "suit" is known to:

**(1)** You, if you are an individual;

**(2)** A partner, if you are a partnership;

**(3)** An "executive officer" or insurance manager, if you are a corporation; or

**(4)** A manager, if you are a limited liability company.

**g.**   Your rights under this Coverage Part will not be prejudiced if you fail to give us notice of an "occurrence," offense, claim, or "suit" and that failure is solely due to your reason able belief that the "bodily injury" or "property damage" is not covered under this Coverage Part. However, you shall give written notice of this "occurrence," offense, claim, or "suit" to us as soon as you are aware this insurance may apply to such "occurrence," offense, claim or "suit."

\* \* \*

**M.   UNINTENTIONAL FAILURE TO DISCLOSE HAZARDS**

Under **SECTION IV - COMMERCIAL GENERAL**

**LIABILITY CONDITIONS,** item **6. Representations,** the following is added:

**d.**   Your failure to disclose all hazards or prior "occurrences" existing as of the inception date of this policy shall not prejudice the coverage afforded by this policy, provided such failure to disclose all hazards or prior "occurrences" is not intentional.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART

Exclusion **f.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

**f.   Pollution**

**(1)**   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged, or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time.

**(2)**   Any loss, cost or expense arising out of any:

**(a)**   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any respond to, or assess the effects of "pollutants"; or

**(b)**   Claim or suit by or on behalf of a governmental authority for damages because of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of "pollutants".

\* \* \*

## COMMERCIAL LIABILITY UMBRELLA COVERAGE FORM

Various provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered.

* * *

### SECTION I - COVERAGES

### COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.  **Insuring Agreement**

    a.  We will pay on behalf of the insured the "ultimate net loss" in excess of the "retained limit" because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking damages for such "bodily injury" or "property damage" when the "underlying insurance" does not provide coverage or the limits of "underlying insurance" have been exhausted. When we have no duty to defend, we will have the right to defend, or to participate in the defense of, the insured against any other "suit" seeking damages to which this insurance may apply. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. At our discretion, we may investigate any "occurrence" that may involve this insurance and settle any resultant claim or "suit" for which we have the duty to defend. But:

        (1) The amount we will pay for the "ultimate net loss" is limited as described in Section Ill - Limits Of Insurance; and

        (2) Our right and duty to defend ends when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages **A** or **B**.

        No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments - Coverages **A** and **B**.

    b.  This insurance applies to "bodily injury" or "property damage" that is subject to an applicable "retained limit". If any other limit, such as a sublimit, is specified in the "underlying insurance", this insurance does not apply to "bodily injury" or "property damage" arising out of that exposure unless that limit is specified in the Declarations under the Schedule of "underlying insurance".

    c.  This insurance applies to "bodily injury" and "property damage" only if:

        (1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2) The "bodily injury" or "property damage" occurs during the policy period; and

        (3) Prior to the policy period, no insured listed under Paragraph 1.a. of Section

II - Who Is An Insured and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known prior to the policy period.

**d.**     "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured listed under Paragraph 1.a. of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property dam age" after the end of the policy period.

**e.**     "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under Paragraph **1.a.** of Section II - Who Is An Insured or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

**(1)**     Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

**(2)**     Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

**(3)**     Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

\* \* \*

**2.**     **Exclusions**

This insurance does not apply to:

\* \* \*

**b.**     **Contractual Liability**

"Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:

**(1)**     That the insured would have in the absence of the contract or agreement;

\* \* \*

**I.**     **Pollution**

**(1)**     "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; or

**(2)**     "Pollution cost or expense".

This exclusion does not apply if valid "underlying insurance" for the pollution liability risks described above exists or would have existed but for the exhaustion of underlying limits for "bodily injury" and "property damage". To the extent this exclusion does not apply, the insurance provided under this Coverage Part for the pollution risks described above will follow the same provisions, exclusions and limitations that are contained in the applicable "underlying insurance", unless otherwise directed by this insurance.

\* \* \*

**m.    Damage To Property**

"Property damage" to:

\* \* \*

**(6)**    That particular part of any property that must be restored, repaired or replaced because "your work" was incorrectly performed on it.

Paragraph **(6)** of this exclusion does not apply to "property damage" included in the "products-completed operations hazard".

\* \* \*

**n.    Damage To Your Product**

"Property damage" to "your product" arising out of it or any part of it.

**o.    Damage To Your Work**

"Property damage" to "your work" arising out of it or any part of it and included in the "products-completed operations hazard".

This exclusion does not apply if the damaged work or the work out of which the damage arises was performed on your behalf by a sub-contractor.

**p.    Damage To Impaired Property Or Property Not Physically Injured**

"Property damage" to "impaired property" or property that has not been physically injured, arising out of:

**(1)**    A defect, deficiency, inadequacy or dangerous condition in "your product" or "your **work**"; or

**(2)**    A delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to "your product" or "your work" after it has been put to its intended use.

\* \* \*

**SECTION IV – CONDITIONS**

* * *

3.     **Duties In The Event Of Occurrence, Offense, Claim Or Suit**

    a.     You must see to it that we are notified as soon as practicable of an "occurrence" or an offense, regardless of the amount, which may result in a claim. To the extent possible, notice should include:

        (1)     How, when and where the "occurrence" or offense took place;

        (2)     The names and addresses of any injured persons and witnesses; and

        (3)     The nature and location of any injury or damage arising out of the "occurrence" or offense.

    b.     If a claim is made or "suit" is brought against any insured, you must:

        (1)     Immediately record the specifics of the claim or "suit" and the date received; and

        (2)     Notify us as soon as practicable.

    You must see to it that we receive written notice of the claim or "suit" as soon as practicable.

    c.     You and any other involved insured must:

        (1)     Immediately send us copies of any demands, notices, summonses or legal papers received in connection with the claim or "suit";

        (2)     Authorize us to obtain records and other information;

        (3)     Cooperate with us in the investigation or settlement of the claim or defense against the "suit"; and

        (4)     Assist us, upon our request, in the enforcement of any right against any person or organization which may be liable to the insured because of injury or damage to which this insurance may also apply.

* * *

**SECTION V - DEFINITIONS**

* * *

8.     "Impaired property" means tangible property, other than "your product" or "your work", that cannot be used or is less useful because:

    a.     It incorporates "your product" or "your work" that is known or thought to be defective, deficient, inadequate or dangerous; or

    b.     You have failed to fulfill the terms of a contract or agreement;

if such property can be restored to use by the repair, replacement, adjustment or removal of

"your product" or "your work", or your fulfilling the terms of the contract or agreement.

* * *

13.   "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

* * *

15.   "Pollutants" means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed.

16.   "Pollution cost or expense" means any loss, cost or expense arising out of any:

    a.   Request, demand, order or statutory or regulatory requirement that any insured or others test for, monitor, clean up, re move, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of "pollutants"; or

    b.   Claim or suit by or on behalf of a governmental authority for damages be cause of testing for, monitoring, cleaning up, removing, containing, treating, detoxifying or neutralizing, or in any way responding to, or assessing the effects of, "pollutants".

17.   "Products-completed operations hazard":

    a.   Includes all "bodily injury" and "property damage" occurring away from premises you own or rent and arising out of "your product" or "your work" except:

        (1)   Products that are still in your physical possession; or

        (2)   Work that has not yet been completed or abandoned.  However, "your work" will be deemed completed at the earliest of the following times:

            (a)   When all of the work called for in your contract has been completed.

            (b)   When all of the work to be done at the job site has been completed if your contract calls for work at more than one job site.

            (c)   When that part of the work done at a job site has been put to its intended use by any person or organization other than another contractor or subcontractor working on the same project.

        Work that may need service, maintenance, correction, repair or replacement, but which is otherwise complete, will be treated as completed.

* * *

18.   "Property damage" means:

    **a.**    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

    **b.**    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

\* \* \*

**21.**  "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

\* \* \*

    **b.**    Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent or the "underlying insurer's" consent.

\* \* \*

**23.**  "Ultimate net loss" means the total sum, after reduction for recoveries or salvages collectible, that the insured becomes legally obligated to pay as damages by reason of settlement or judgments or any arbitration or other alternate dispute method entered into with our consent or the "underlying insurer's" consent.

**24.**  "Underlying insurance" means any policies of insurance listed in the Declarations under the Schedule of "underlying insurance".

**25.**  "Underlying insurer" means any insurer who provides any policy of insurance listed in the Schedule of "underlying insurance".

\* \* \*

**27.**  "Your product":

    **a.**    Means:

        **(1)**    Any goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by:

            **(a)**    You;

            **(b)**    Others trading under your name; or

            **(c)**    A person or organization whose business or assets you have acquired; and

        **(2)**    Containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or products.

    **b.**    Includes:

    **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, perform- ance or use of "your product"; and

    **(2)**   The providing of or failure to provide warnings or instructions.

  **c.**   Does not include vending machines or other property rented to or located for the use of others but not sold.

**28.**   "Your work":

  **a.**   Means:

    **(1)**   Work or operations performed by you ro on your behalf; and

    **(2)**   Materials, parts or equipment furnished in connection with sch work or operations.

  **b.**   Includes:

    **(1)**   Warranties or representations made at any time with respect to the fitness, quality, durability, performance or use of "your work"; and

    **(2)**   The providing of or failure to provide warnings or instructions.

\* \* \*

**THIS ENDORSEMENT CHANGES THE POLICY.
PLEASE READ IT CAREFULLY.**

**TOTAL POLLUTION EXCLUSION ENDORSEMENT**

This endorsement modifies insurance provided under the following:

COMMERCIAL LIABILITY UMBRELLA COVERAGE PART

Exclusion **I.** under Paragraph **2., Exclusions** of **Section I – Coverage A – Bodily Injury And Property Damage Liability** is replaced by the following:

This insurance does not apply to:

  **I.**    **Pollution**

    **(1)**   "Bodily injury" or "property damage" which would not have occurred in whole or part but for the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of "pollutants" at any time; Or

    **(2)**   "Pollution cost or expense".

\* \* \*

    21.    Under the terms of the Policy, Westfield provides general liability coverage, and has

agreed to pay those sums which its Insured, R&D, becomes legally obligated to pay as damages

because of "bodily injury" or "property damage" caused by an "occurrence," to which the Policy applies.

22.     In connection with the claims of the Phoenix Defendants, there is  no allegation or claim for "bodily injury," as defined by the Policy.

23.     Nor do the Phoenix Defendants assert a claim for loss or damage arising from an "occurrence," defined by the Policy as an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

24.     Instead, the Phoenix Defendants assert a claim for economic damages based upon their allegation that R&D failed to complete its work according to the specifications of its contract with the Phoenix Defendants or the guidelines of the WVDEP and the EPA such that the Phoenix Defendants were required to pay other contractors to remediate/repair R&D's allegedly deficient work.

25.     The Phoenix Defendants have also asserted a claim for breach of contract against R&D, and seek consequential damages arising from the alleged breach.

26.     Even assuming, *arguendo*, that coverage under the Westfield Policy is "triggered" by the claims of the Phoenix Defendants against R&D, the Westfield Policy contains relevant exclusions which are applicable and exclude coverage for the Phoenix Defendants' claims.

27.     The Westfield Policy contains a Contractual Liability Exclusion, which precludes coverage for any liability that R&D incurs for breach of its contract or agreement with the Phoenix Defendants.

28.     In addition, the Westfield Policy excludes coverage for "property damage" to that particular part of any property that must be restored, repaired or replaced because the work of R&D was incorrectly performed on it.

29.     The Westfield Policy excludes coverage for damage to R&D's work and/or product.

30.     The Westfield Policy also excludes coverage for damages to "impaired property" arising out of a defect or deficiency in R&D's work.

31.     Finally, the Westfield Policy excludes coverage for damages caused by the actual or alleged discharge, dispersal, seepage, migration, release or escape of pollutants.

32.     The Umbrella Coverage of the Westfield Policy requires that any claim for "bodily injury" or "property damage" be caused by an "occurrence" for coverage to apply.

33.     In addition, exclusions under the Umbrella Coverage apply and preclude coverage for the claims of the Phoenix Defendants against R&D under the Commercial Umbrella provisions of the Policy.         34.     An actual case or controversy exists between the parties.

WHEREFORE, Westfield moves the Court for entry of its order granting declaratory judgment to Westfield as follows:

> a.     That the Westfield Policy does not provide coverage for the defense or indemnification of R&D  for those claims asserted by the Phoenix Defendants arising from the culvert project which is the subject of Civil Action No. 21-C-126;

b.      That Westfield has no duty to defend or indemnify R&D against the claims asserted by the Phoenix Defendants arising from the culvert project which is the subject of Civil Action No. 21-C-126; and

c.      That Westfield is entitled to such further and additional relief as the Court deems just and proper.

**WESTFIELD INSURANCE COMPANY DEMANDS A TRIAL BY JURY AS TO ALL FACTUAL ISSUES, IF ANY.**

**WESTFIELD INSURANCE COMPANY**

**By counsel,**

/s/ *Brent K. Kesner*

Brent K. Kesner (WVSB #2022)
Tanya M. Kesner (WVSB #5162)
**Kesner & Kesner, PLLC**
P.O. Box 2587
Charleston, WV 25329
*Phone:* (304) 345-5200
*Fax:* (304) 345-5265

35067/173

23